UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-6022-CIV-LENARD

MAGISTRATE JUDGE TURNOFF

HENRY NARANJO and
MARLENE RAMIREZ,

      Plaintiffs,

vs.

STEPHEN BYRON SMITH, and
PALMER JOHNSON, INC.

      Defendants.
_____/

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S, STEVEN BYRON SMITH, MOTION FOR SUMMARY JUDGMENT

COME NOW the Plaintiffs, HENRY NARANJO and MARLENE RAMIREZ, by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, files this Memorandum of Law in Opposition to Defendant's, Steven Byron Smith, Motion for summary Judgment, and states as follows:

#### NATURE OF THE ACTION

1. The Plaintiffs agree with Defendant's, Steven Byron Smith (hereinafter "SMITH"), statement regarding the nature of the action.

#### STATEMENT OF UNDISPUTED MATERIAL FACTS

2. The Plaintiffs agree that the material facts as stated in paragraphs 1, 2, 3, 4, 6, 9, 10, 14, 15 and 16 in SMITH's Motion for Summary Judgment are undisputed.

CASE NO.: 00-6022-CIV-LENARD
MAGISTRATE JUDGE TURNOFF

## LIST OF DISPUTED MATERIAL FACTS

3. The Plaintiffs contend that paragraphs 5, 7, 8, 11, 12, 13, 17 a-h, 18 and 19 a-b, contain facts that are in dispute.

## MEMORANDUM OF LAW

It is undisputed that at the time of the explosion on the yacht Souvenir, Plaintiff, Henry Naranjo (hereinafter "NARANJO"), was a ship repairer within the definitions of 33 U.S.C. §901 *et seq.*, also known as the Longshore and Harbor Workers' Compensation Act (LHWCA). Pursuant to the LHWCA, the Plaintiff had the right to bring a claim against his employer, Bradford Marine, and also the owners of the yacht Souvenir, pursuant to 33 U.S.C. §905(b).

Pursuant to §905(b), the Plaintiff, NARANJO, filed a claim against Defendant, SMITH, as owner of the yacht Souvenir. The Amended Complaint alleges that SMITH and/or his agent, Capt. Jack Bredbeck, failed to turn over the yacht to NARANJO, in a reasonably safe condition and further, SMITH and Capt. Bredbeck knew, or should have known, that there was a dangerous condition aboard the yacht Souvenir. As discussed by SMITH in his Motion, the United States Supreme Court in Scindia Steam Navigation Company, Ltd. vs. De Los Santos, 451 U.S. 156 (1981), outline the duties owed by a ship owner to employees of independent contractors working aboard a vessel.

The key issue in this case against the vessel owner revolves around what is called the "turn over duty" and Defendant's failure to use reasonable care under the circumstances. The ship owner and his Captain are in the best position to know the conditions of the vessel and must

exercise ordinary care under the circumstances to turn over a reasonably safe vessel, equipment, and workspaces, so that a reasonably competent worker can safely perform his job. The ship owner has a duty to at least warn a ship repairer of any hazards or hidden defects that would not be known or obvious to the ship repairer. See Scindia 451 U.S. at 166-67.

It is undisputed that an explosion occurred in the void space between the floor of the lazarette and the bottom of the yacht. It is also undisputed that some type of explosive vapor was present in the void space when NARANJO commenced welding on the lazarette deck. It is undisputed that no one at Bradford Marine, including Tony Watson, David Henderson or Mark Tortora, knew of the existence of the void space. It is undisputed that the explosion occurred in the void space between the lazarette deck and the bottom of the hull and that an explosive gas was ignited by the heat from the welding electrode. Peter Rimmel, a marine chemist retained by Bradford Marine, examined the yacht the day after the explosion, in particular, the lazarette area. Mr. Rimmel testified that it was his opinion that the void space contained hydrogen gas that more likely than not came from a chemical reaction between the cement and the aluminum material of the hull (See Rimmel deposition at pages 22-24). (At this point, there is no competent evidence contradicting the opinions of Peter Rimmel, although NARANJO assumes that Defendants will have an expert to testify otherwise. Discovery is ongoing and aside from Peter Rimmel, none of the expert or technical witnesses have been deposed.) NARANJO contends that the void space containing the explosive vapors was a dangerous condition, which the ship owner, SMITH, or his agent, Capt. Bredbeck, should have known about. Whether SMITH or Capt. Bredbeck knew or should have known of this dangerous condition is a material fact that is in dispute and precludes

CASE NO.: 00-6022-CIV-LENARD
MAGISTRATE JUDGE TURNOFF

the court from granting summary judgment.

Summary judgment is warranted only if there are no genuine issues as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); see also Fed.R.Civ.P. 56. While the party opposing a summary judgment has the burden of showing that a genuine dispute on a material fact exists, the court should review the evidence and reasonable inferences in the light most favorable to the non-moving party. Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 609 (11th Cir. 1987). The evidence that has been developed to date in this case certainly raises the issue whether SMITH, and/or Capt. Bredbeck, knew or should have known of the dangerous condition under the lazarette deck.

Capt. Bredbeck's deposition testimony is contradictory as to whether he knew a void space existed under the lazarette deck. In one instance, Capt. Bredbeck says that he did not know what was under the deck (See deposition of Capt. Bredbeck at page 42) and in another instance, he states that it was obvious by walking on the lazarette deck that there was a hollow space beneath. (See deposition of Capt. Bredbeck at pages 102-103). Additionally, Capt. Bredbeck knew that several holes had been drilled into the deck of the lazarette (See deposition of Capt. Bredbeck at page 95). This material fact demonstrates that Capt. Bredbeck knew or should have known of the void space, and should have told NARANJO or Tony Watson. However, NARANJO testified that he had asked Capt. Bredbeck what was under the lazarette deck before he commenced welding, and was told that the space was filled with cement flush to the bottom of the deck. (See deposition of NARANJO at pages 40, 50 and 118).

It is further undisputed that the blueprints illustrating the structure of the yacht were onboard at the time of the explosion (See deposition of Capt. Bredbeck at pages 40, 63 and 114), and that the blueprints clearly showed that a void space existed under the lazarette deck. The fact that these blueprints were available to Capt. Bredbeck is sufficient for a trier of fact to find that Capt. Bredbeck had at least constructive knowledge of the dangerous condition, if not actual knowledge. Unfortunately, Capt. Bredbeck did not consult the blueprints, nor did he offer the blueprints to NARANJO. In fact, the Capt. Bredbeck testified that he did not give much thought to the whole process and he thought that this was going "to be a 10 minute job and nobody thought much about it until all this happened." (See deposition of Capt. Bredbeck's at page 44).

In his Motion, SMITH contends that NARANJO was an experienced welder, and should have made certain that the area was "gas free" before commencing work. While this contention may be accurate when taken out of the context of the situation here, the fact is that NARANJO thoroughly vented the lazarette space prior to commencing work and asked the person with the most knowledge concerning the vessel, Capt. Bredbeck, as to what was underneath the deck of the lazarette. Further, NARANJO testified at deposition that he appropriately placed a fire blanket in the lazarette before beginning welding (See deposition of NARANJO at pages 10-11), and Capt. Bredbeck testified that NARANJO appropriately posted a fire watch before commencing welding (See deposition of Capt. Bredbeck at page 44). NARANJO's welding practices have no bearing whatsoever on SMITH's duty to turn over the vessel in a safe condition but go only to the issue of NARANJO's comparative negligence, if any.

CASE NO.: 00-6022-CIV-LENARD
MAGISTRATE JUDGE TURNOFF

WHEREFORE, the Plaintiffs, HENRY NARANJO and MARLENE RAMIREZ, respectfully request this Honorable Court to deny Defendant's, STEPHEN BYRON SMITH, Motion for Summary Judgment, and any other relief it deems just and proper.

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that a true and correct copy of the foregoing, PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S, STEVEN BYRON SMITH, MOTION FOR SUMMARY JUDGMENT, was mailed on this 18th day of May, 2001, to the parties listed on the attached List of Service.

Respectfully submitted,

**Manuel Valdes, Esquire**
FLA. BAR NO.13307
Co-Counsel for Plaintiffs
910 Madarid
Coral Gables, FL 33134
Tel: 305/529-5428

and

BLANCK & PERRY, P.A.
Co-Counsel for Plaintiffs
5730 S.W. 74th Street, Suite 700
Miami, Florida 33143
Tel: 305/663-0177; Fax: 305/663-0146

BY: _____
F. DAVID FAMULARI, ESQUIRE
FLA. BAR NO. 0860506

CASE NO.: 00-6022-CIV-LENARD
MAGISTRATE JUDGE TURNOFF

## **LIST OF SERVICE**

John D. Kallen, Esquire
Badiak, Will & Kallen
Counsel for Stephen Byron Smith
17071 West Dixie Highway
North Miami Bch, FL 33160
Tel: 305/945-1851
Fax: 305/944-8780

**David L. Weber, Esquire** (Wisc. Bar No. 1010749)
Pinkert Law Firm LLP
Co-Counsel for Palmer Johnson, Inc.
454 Kentucky Street
Sturgeon Bay, Wisconsin 54235-0089
Tel: 1/920/743-6505
Fax: 1/920/743-2041

**Frank J. Sioli, Esq.**
Valle & Craig, P.A.
Counsel for Palmer Johnson, Inc.
80 SW. 8th Street, Suite 2520
Miami, FL 33130
Tel: 305/373-2888
Fax: 305/373-2889