UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HENRY NARANJO

  Plaintiff,

vs.

STEPHEN BYRON SMITH, and
PALMER JOHNSON, INC.

  Defendants,
_____/

PALMER JOHNSON, INC.

  Third Party Plaintiff,

vs.

TOM FEXAS YACHT DESIGN, INC.

  Third-Party Defendant.
_____/

CASE NO.: 00-6022-CIV-LENARD
MAGISTRATE JUDGE TURNOFF

### PLAINTIFF'S RESPONSE TO DEFENDANT, PALMER JOHNSON, INC.'S, MOTION FOR SANCTIONS AND INCORPORATED MEMORANDUM OF LAW DATED SEPTEMBER 18, 2001

COMES NOW the Plaintiff, HENRY NARANJO, by and through undersigned counsel, and files this Response to Defendant, PALMER JOHNSON, INC.'S, Motion for Sanctions, Motion to Strike and Motion for a Continuance in this matter. In support thereof, the Plaintiff states as follows:

1. Sanctions are not warranted in this case based on the following facts and circumstances.

CASE NO.: 00-6022-CIV-LENARD
MAGISTRATE JUDGE TURNOFF

2. That Defendant, PALMER JOHNSON, INC. (hereinafter PALMER JOHNSON), unilaterally and on short notice scheduled the depositions of Plaintiff's liability expert witnesses, Robert Camuccio, U.S.C.G. (Ret.), and Dr. Burch Stewart, Chemist for Applied Consumer Services, Inc. These expert witnesses were disclosed previously to the all defendants on May 1, 2001, as required by this Court's Order. However, Defendant, PALMER JOHNSON, chose not to set the depositions at an earlier date.

3. That immediately prior to the scheduling of these expert witness depositions, Plaintiff had gone, at a great expense, to Sturgeon Bay, Wisconsin, to depose Don Kasten, Defendant's, PALMER JOHNSON, Corporate Representative with the most knowledge as to the construction of the yacht in question, and to depose another former PALMER JOHNSON employee by the name of Bjourn Johansen, who oversaw the construction of the yacht in the year 1984. Both of these witnesses had relevant and material information and knowledge that pertained to the liability aspect of the case. The depositions were taken on Monday, August 20, 2001, but the transcripts were not available to Plaintiff's expert witnesses because the expert witness discovery depositions were set so close in time to the liability deposition of Kasten and Johansen. Indeed, Defendant unilaterally set the depositions for August 31, 2001, via facsimile transmission notice, dated Friday, August 24, 2001.

4. That on Tuesday, August 28, 2001, counsel for Plaintiff filed a motion for a protective order and confirmed with defense counsel for PALMER JOHNSON, Laurence Valle, Esq., telephonically, who agreed to reschedule the depositions so that the Plaintiff's

2

CASE NO.: 00-6022-CIV-LENARD
MAGISTRATE JUDGE TURNOFF

experts could receive and review the depositions taken in Sturgeon Bay, Wisconsin. Furthermore, <u>Plaintiff agreed to make the experts available immediately thereafter for deposition.</u>

5. However, in the interim, and totally unbeknownst to the Plaintiff, this court denied Defendant's motion to extend the time period for expert witness discovery. Plaintiff is still ready, willing and able to produce t heir experts for deposition. At no time has Plaintiff thwarted the Defendants discovery in this matter, as the transcripts from Sturgeon Bay, Wisconsin, arrived only recently by overnight mail on Thursday, September 20, 2001, and therefore sanctions are not warranted because Plaintiff did not act in bad faith.

6. Additionally, Defendant, PALMER JOHNSON, listed Dr. Carlos Diaz-Silveira as an Independent Medical Examination (IME) psychiatrist on June 1, 2001, and pursuant to the court's order directing the Defendant to disclose experts in this case. Defendant <u>did not disclose or list Dr. Thomas J. Goldschmidt</u>, instead, Dr. Diaz-Silveira was listed. Attached hereto is a copy of the Defendant, PALMER JOHNSON'S, expert disclosure, marked as Exhibit "A." (See paragraph six on the expert witness list).

7. Plaintiff objects to the use of Dr. Goldschmidt as he is a neurologist and a psychiatrist. Defendant, PALMER JOHNSON, already listed and disclosed a neurologist by the name of Alan Wagshul, M.D. (See Exhibit "A"). Additionally, Plaintiff has never treated with a psychiatrist and has never listed a psychiatrist as an expert witness. Plaintiff listed a treating psychologist by the name of Michael Hendrickson, Ph.D. Plaintiff would be

3

CASE NO.: 00-6022-CIV-LENARD
MAGISTRATE JUDGE TURNOFF

severely prejudiced if the Defendant, PALMER JOHNSON, is allowed to list Dr. Goldschmidt at this late date as he was disclosed officially on September 7, 2001, well after the discovery cutoff and well after the required expert witness disclosure.

8. Additionally, Plaintiff objects to the use of Dr. Goldshcmidt as the testing proposed by Dr. Goldschmidt was flawed. Attached hereto as Exhibit "B" and incorporated herein, is a copy of the letter Plaintiff sent to counsel for PALMER JOHNSON, explaining the circumstances surrounding the attempted IME on September 11, 2001, and all of the problems that occurred at Dr. Goldschmidt's office.

9. Lastly, Plaintiff did not interfere with the IME and was asked to leave the premises by Dr. Goldschmidt's staff, after problems arose with the testing and the translator, who was hired by the Defendant, PALMER JOHNSON, and the way the test was being administered. Plaintiff objects to the use of Dr. Goldschmidt in this case as it is clearly prejudicial, unfair and inequitable to allow the Defendant to: (A) Name as an expert a specialty that Plaintiff has not listed; (B) Allow the Defendant to add an expert well beyond the disclosure and cutoff; (C) Allow an expert who's tests and methods were flawed from the beginning.

10. Plaintiff agrees that Defendant, PALMER JOHNSON, is entitled to use an expert witness psychologist in this case as Plaintiff has disclosed a treating psychologist, or in the alternative, Defendant can use Dr. Diaz-Silveira, who was originally listed and disclosed.

11. Plaintiff disagrees with the Defendant, PALMER JOHNSON, and objects to a continuance in this matter as Plaintiff has followed this court's prior expert witness

4

CASE NO.: 00-6022-CIV-LENARD
MAGISTRATE JUDGE TURNOFF

disclosure order and timely disclosed experts on May 1, 2001. Defendant has not been prejudiced and the case should continue in the November/2001 trial calendar.

Additionally, this case is set for a Settlement Conference, before Magistrate Judge Turnoff, on October 16, 2001, and therefore a continuance is premature.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court: (A) Deny the Defendant, PALMER JOHNSON'S, Motion for Sanctions; (B) Deny the Defendant, PALMER JOHNSON'S, Motion to Strike Plaintiff's Experts; (C) Deny the Defendant, PALMER JOHNSON'S, Motion for Continuance.

### CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that a true and correct copy of the foregoing was mailed on this _27_ day of September, 2001, to the parties listed on the attached List of Service.

Respectfully submitted,

BLANCK & PERRY, P.A.
Co-Counsel for Plaintiff
5730 S.W. 74th Street, Suite 700
Miami, Florida 33143
Tel: 305/663-0177; Fax: 305/663-0146

BY: _____
F. DAVID FAMULARI, ESQUIRE
FLA. BAR NO. 0860506

and

MANUEL VALDES, ESQUIRE
Counsel for Plaintiff
28 West Flagler Street, Suite 202
Miami, FL 33130
FLA. BAR NO. 13307
Tel. No.: 305/377-3700; Fax No.: 529-5428

5

CASE NO.: 00-6022-CIV-LENARD
MAGISTRATE JUDGE TURNOFF

## LIST OF SERVICE

**John D. Kallen, Esquire**   (Fla. Bar No.: 277428)
Badiak, Will & Kallen
<u>**Counsel for Stephen Byron Smith**</u>
17071 West Dixie Highway
North Miami Bch, FL 33160
Tel: 305/945-1851; Fax: 305/944-8780

**David L. Weber, Esquire**   (Wisc. Bar No.: 1010749)
Pinkert Law Firm LLP
<u>Co-Counsel for Palmer Johnson, Inc.</u>
454 Kentucky Street
Sturgeon Bay, Wisconsin 54235-0089
Tel: 1/920/743-6505; Fax: 1/920/743-2041

**Frank J. Sioli, Esq.**   (Fla. Bar No.: 9652)
Valle & Craig, P.A.
<u>Counsel for Palmer Johnson, Inc.</u>
Dadeland Center, Suite 1000
9155 S. Dadeland Boulevard
Miami, FL 33156
Tel: 305/373-2888; Fax: 305/373-2889

**Joseph L. Mannikko**   (Fla. Bar No.: 383120)
Mannikko & Baris
<u>Counsel for Tom Fexas Yacht Design, Inc.</u>
870 S.W. Martin Downs Boulevard
Suite 1
Palm City, Florida 34990
Tel: 561/283-0084; Fax: 561/283-1084

6

# PLAINTIFF'S
# EXHIBIT "A"

LFV:FJS/lks
97-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

HENRY NARANJO and
MARLENE RAMIREZ,

CASE NO. 00-6022-CIV-LENARD
Magistrate Judge Turnoff

    Plaintiffs,

v.

STEPHEN BYRON SMITH, and
PALMER JOHNSON, INC.,

    Defendants.
_____/

## DEFENDANT'S EXPERT WITNESS DISCLOSURE

COMES NOW the Defendant, PALMER JOHNSON, INC., by and through undersigned counsel, and pursuant to the Court's Trial Order, and files this its Expert Witness Disclosure:

1) Dave Jones
   D. E. Jones & Associates, Inc.
   607 Apalachee Circle, NE
   St. Petersburg, Florida 33702

   Mr. Jones is expected to testify that the vessel was designed pursuant to the applicable design standards of Naval Architecture.

2) Lee Swanger, Ph.D. and/or Dave Wills, Ph.D.
   ExPonent/Failure Analysis
   4101 Southwest 71st Avenue
   Miami, Florida 33155

   Dr. Swanger and/or Dr. Wills are expected to testify that the vessel *Souvenir* conformed to the applicable engineering and manufacturing standards.

3) Manfred H. Ledford, Ph.D.
   Department of Finance
   University of Miami

P.O. Box 248094
Coral Gables, Florida 33124

Dr. Ledford is expected to testify regarding the Plaintiffs' economic losses as a result of the incident.

4) Theodore S. Bilski, C.D.M.S., M.B.A.
708 Kingston Court
Apollo Beach, FL 33572

OR

Raquline Fals, C.R.C.
IRG/Seltzer Delman
1300 Sawgrass Corporate Parkway, Suite 130
Sunrise, FL 33323

Mr. Bilski or Ms. Fals is expected to testify concerning the Plaintiffs' vocational potential and present/future earning capacity. (Mr. Bilski's health will determine whether his is our primary witness in this area of expertise).

5) Jay Stein, M.D.
9699 NE 2nd Avenue
Miami Shores, Florida 33138
IME Orthopedist

Dr. Stein is expected to testify concerning the Plaintiffs' Orthopedic condition.

6) Carlos Diaz-Silveria, M.D.
Mercy Professional Building
3661 South Miami Avenue
Suite 903
Miami, Florida 33133
IME Psychiatrist

Dr. Diaz-Silveria is expected to testify concerning the Plaintiffs' psychological and psychiatric condition.

7) Alan M. Wagshul, M.D.
7330 SW 62nd Place
Suite 310
South Miami, Florida 33143
IME Neurologist

Dr. Wagshul is expected to testify concerning the Plaintiffs' neurological condition.

8) Guillermo Pasarin, M.D.
   4900 West Oakland Park Blvd., Suite 105
   Fort Lauderdale, Florida 33313

   Dr. Pasarin is expected to testify concerning the Plaintiffs' surgical residuals and condition, and whether any future neurosurgery may be necessary.

9) Bryce Epstein, M.D.
   21000 NE 28th Avenue
   Suite 104
   Aventura, FL 33180

   Dr. Epstein is expected to testify concerning the Plaintiff's physical condition based from a physiatrist's point of view.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing motion has been furnished by mail this **1st** day of **June, 2001** to: **Manuel Valdes, Esquire**, Law Offices of Manuel Valdes, Attorneys for Plaintiffs, 910 Madrid Street, Coral Gables, Florida 33134; **F. David Famulari, Esquire**, Co-Counsel for Plaintiffs, Blanck & Perry, P.A., 5730 SW 74th St., Suite 700, Miami, FL 33143; **John D. Kallen, Esquire**, Badiak, Will & Kallen, Attorneys for Stephen Byron Smith, 17071 West Dixie Highway, North Miami Beach, Florida 33160; and David L. Weber, Esquire, Pinkert Law Firm LLP, 454 Kentucky Street, P.O. Box 89, Sturgeon Bay, WI 54235-0089.

VALLE & CRAIG, P.A.
Co-Counsel for Defendant,
PALMER JOHNSON, INC.
Dadeland Centre
Suite 1000
9155 South Dadeland Boulevard
Miami, Florida 33156
Telephone:     (305) 373-2888
Fax:           (305) 373-2889

By: _____
    LAURENCE F. VALLE
    Florida Bar No. 121382
    FRANK J. SIOLI
    Florida Bar No. 009652

**PLAINTIFF'S
EXHIBIT "B"**

# MANUEL F. VALDES, ESQUIRE
28 West Flagler Street
Suite 202
Miami, FL 33130

Telephone No.: (305) 377-3700
Facsimile No.: (305) 529-5428

September 11, 2001

<u>Via U.S. Mail and Facsimile Transmission: 305/373-2889</u>

Valle & Craig, P.A.
Attn: Frank J. Sioli, Esquire
Dadeland Center, Suite 1000
9155 S. Dadeland Boulevard
Miami, FL 33156

Re: Henry Naranjo vs. Steven Byron Smith, et al.
U.S. District Court Case No.: 00-6022-CIV-LENARD
**COMPULSORY MEDICAL EXAMINATION WITH DR. GOLDSCHMIDT**
Our File No: 6104

Dear Mr. Sioli:

Please be advised that Mr. Naranjo and I appeared for the compulsory medical examination (CME) at 9:30 a.m., with Dr. Goldschmidt, in Northwest Broward County on Tuesday, September 11, 2001.

Upon arrival, Mr. Naranjo was required to fill out a questionnaire and sign a consent form. Dr. Goldschmidt, through the use of an interpreter hired by your firm, made it clear to Mr. Naranjo that I would not be given copies of any of the documents that he filled out that day. The doctor then turned to me and stated that if I "uttered a word during his examination the examination would automatically cease and that he would have to go the Judge."

I then advised the doctor that if he were to begin asking my client questions about how the accident occurred in any great detail that I would object to those questions. The doctor then stated that if I objected, the examination would cease and he further stated that he was free to ask any question he desired. This, in turn, caused me to call you on my cell phone to advise of the situation and of my objection to the doctor asking questions that go to the liability issues in this case and not to Mr. Naranjo's medical condition. You then spoke to the doctor and we

Frank Sioli, Esquire
September 11, 2001
Page 2

proceeded with the CME after you and I agreed that the doctor's questions would be very limited as to how the accident occurred because this is the liability aspect of the claim and does not have anything to do with his physical condition.

Next, Mr. Naranjo was provided three questionnaires or written examinations in English for him to fill out. You and I both know that this is not his native language. I objected and Dr. Goldschmidt then suggested that the translator interpret the exams from English to Spanish. This poses a problem in that you are now involving the interpreter who is not being tested in the test itself and you are now relying on the interpreter's understanding of the questions. Again, I objected, and Mr. Naranjo was only then provided with a test in Spanish.

Mr. Naranjo began to take the test and it immediately became clear that the Spanish version was poorly translated into Spanish with some portions totally incorrect, misnumbered, and improperly spelled. This was brought to the doctor's staff's attention. The interpreter was then brought in and given a copy of the test in English. As the translator began to interpret the questions on the English version and the Spanish version, he stated, after reviewing the entire exams, that "The whole exam in Spanish is wrong and needs to be totally redone " Mrs. Orr, the nurse who was present, then stated that they had had the test "informally translated and that they had not had the time to get it professionally done." Nonetheless, in a good faith attempt to resolve this matter, we proceeded forward.

During the testing, it became obvious that there were major problems with the questions in that the translator and my client engaged in a colloquy to try and figure out what was being asked and how to answer the question. On numerous occasions, the translator had to ask nurse Orr for guidance as to what exactly was being asked in the question. This situation is clearly of great concern as to the validity of this test, as you now have Mr. Naranjo, the translator, and the nurse answering the test. While at the same time, I'm precluded from objecting even though I speak both languages fluently. Furthermore, on several occasions, my client asked the translator what was being asked and the translator told my client what to write down. This obviously poses a great problem with the test. Finally, after about 30 to 40 minutes into the test, the translator again remarked that the test questions were "terrible" and that the test should be professionally translated. He even pointed out that some of the test questions were misnumbered. This situation was remedied by asking my client to write in his handwriting the test answer with the correct number next to it.

Faced with this situation, I instructed my client to stop and we were curtly and promptly asked to leave by nurse Orr. We were not given copies of the any of the documents.

Frank Sioli, Esquire
September 11, 2001
Page 3

Additionally, while speaking with Dr. Goldschmidt about my client's surgery, he tipped his hand and stated that in his opinion, the back fusion surgery was not medically necessary and questioned why it had been done in the first place. As you know, Dr. Goldschmidt was hired as a psychiatrist, and not a neurologist or as an orthopaedic surgeon. I will not allow him to comment, either in deposition or in trial, that the surgery was not necessary, as this is not the expertise that he was disclosed for. Furthermore, the defendant, Palmer Johnson, has already retained a neurologist, a neurosurgeon, and an orthopaedic surgeon to render opinions on the necessity of the surgery.

Finally, while Mr. Naranjo and I were at Dr. Goldschmidt's office, we were informed that the CME would last six hours and that there would be no break for lunch. It is clearly unreasonable to require Mr. Naranjo to go almost the entire day without eating while requiring him to undergo multiple written and oral testing, with the use of a translator, which only makes the process longer.

Clearly, this CME was not properly performed, and before you try to reset it please contact me as I have grave reservations and will object based on the foregoing. I urge you to obtain copies of the actual tests used and have your staff compare them so that you can see that the test is flawed. I also request copies of all documents filled out by Henry Naranjo while at Dr. Goldschmidt's office, including the English version and the Spanish version which Mr. Naranjo partially filled out before we were asked to leave.

Thank you for your cooperation in this matter.

Very truly yours,

MANUEL F. VALDES, ESQUIRE

cc:   John D. Kallen, Esquire
      David L. Weber, Esquire
      Joseph L. Mannikko, Esquire